(33 Misc. Rep. 404.)

### VAN WYCK v. RICHMAN.

(Supreme Court, Special Term, New York County. December, 1900.)

1. TRUSTS—SALE BY TRUSTEE—DESCRIPTION—PURCHASER'S REFUSAL TO COMPLETE—EVIDENCE.

Where, in a proceeding to compel the purchaser of real estate at a trustee's sale to complete the same, the defense was that the trustee could not convey the amount of property advertised, and there was no serious dispute between the surveyors for both parties that the amount of land offered at the sale was contained in the lot, the only difference between them being as to the position of a certain street, and the trustee offered the purchaser a deed describing the property as advertised, or a deed containing the same description as was contained in a deed to the property to the grantor in trust, the objection was invalid.

**2.** SAME—TRUSTEE—APPOINTMENT —APPLICATION — NOTICE — REAL PROPERTY LAW.

Where a beneficiary under a trust mortgaged his right to another cestui que trust, and the mortgage was foreclosed, and the interest purchased by the mortgagee, and another beneficiary assigned his interest to the property to such mortgagee, such conveyances being authorized by Real Property Law (Laws 1896, c. 547) §§ 83, 84, the heirs of the mortgagor and assignor, having no interest in the trust or in the res, were not entitled to notice of an application to the supreme court for the appointment of a trustee, under Real Property Law, § 87, declaring that the supreme court shall not grant an order for the sale, mortgage, or lease of trust property without proof of service of notice on the beneficiary.

**3.** SAME—TERMINATION OF TRUST—ACTS OF REMAINDER-MAN.

Where property was devised in trust for the payment of an annuity, remainder to the testator's heirs, and, after the death of the original trustee, his executor accounted for the rents, and was appointed administrator with the will annexed, and served until after the annuitant's death, when, on application, the supreme court appointed a trustee of the property, holding that the title to the estate was in the original trustees under the will, and that on their death the duty devolved on the supreme court to appoint another trustee to carry out the provisions of the will, an objection by a purchaser of a portion of the trust property, at a sale made by the trustee appointed by the supreme court, that the heirs had so acted as to destroy the trust, in that certain of them had conveyed and mortgaged their interest to another, who, however, had made no demand for rents and profits, was not well founded.

Action by August Van Wyck, as substituted trustee of the estate of William Appleby, deceased, to compel Lewis L. Richman to complete his purchase of certain property sold by the trustee. Judgment for plaintiff.

Mulqueen & Mulqueen, for plaintiff.

M. Hallheimer, for defendant.

ANDREWS, J. This is an action to compel the defendant to perform his contract to purchase No. 127 Pitt street, in the city of New York. The property in question was purchased by William Appleby in 1827. He died in 1870, seised of the premises, leaving a will, which was duly admitted to probate by the surrogate of the county of New York, in which he named as executors and trustees his sons, James Appleby and Joseph C. Appleby. James Appleby qualified as such executor and trustee, went into possession of the property, collected the rents and profits, and accounted for the same before the surrogate, up to the time of his discharge, October 23, 1878. Thereafter the other executor and trustee, Joseph C. Appleby, qualified, and went into possession of the premises, and collected the rents thereof, until his death, on June 27, 1883. From time to time he accounted as such executor and trustee to said surrogate, and distributed the rents, after the payment of the expenses, in accordance with the decree of the surrogate. After his death, his executors, William T. Black, Howard H. Smith, and Mary Appleby, accounted for such rents collected by said Joseph C. Appleby from the time of his last accounting up to his death. Thereafter William T. Black was appointed administrator with the will annexed of William Appleby, deceased, went into possession of the premises, collected the rents for the estate of William Appleby, and accounted from time

to time to the surrogate for such collections, and distributed the same in accordance with the terms of the decree of the surrogate entered upon various accountings. Sarah Ann Appleby, the annuitant named in the will of William Appleby, died February 2, 1895. William T. Black continued as administrator with the will annexed up to May 5, 1899, when, a partition suit having been brought, the appellate division in this department decided that, on the death of the trustees named in the will of William Appleby, the estate devolved upon the supreme court, and that a trustee should be appointed by the said court to carry out the provisions of said will. Horsfield v. Black, 40 App. Div. 265, 57 N. Y. Supp. 1006. Thereafter Augustus Van Wyck was appointed trustee, and proceeded to carry out the provisions of the will by a sale at auction of the property No. 474 Grand street and No. 127 Pitt street, in this city. No objection was taken to the title of No. 474 Grand street, and the trustee conveyed said property. The defendant in this action has refused to complete his purchase, and has filed various objections, as follows:

First. That the trustee cannot convey the premises No. 127 Pitt street, containing 24 feet 10¾ inches in front, 25 feet in the rear, and 100 feet on both sides. This objection is not sustained by the testimony of Mr. Towle, surveyor, who was called as a witness for the defendant upon the trial. He testified that he had surveyed the lot No. 125 Pitt street; that on this lot had been erected a six-story building; that on No. 129 Pitt street there had been erected a four-story building; and that between the northerly wall of one of the buildings and the southerly wall of the other stood the vacant lot No. 127 Pitt street; and that the vacant lot contained the full amount of land which the trustee agreed to convey. He also testified that if he began his description from the northerly line of the lot known as No. 125 Pitt street, and described the lot No. 127 Pitt street in the manner in which it was described in the advertisement published by said trustee, his description would contain all the land which the trustee agreed to sell; also that, if the description of the property was taken from Stanton street instead of Houston street, the trustee could convey all the vacant land he agreed to sell. The only difference between Mr. Towle and the surveyor for the trustee is as to the true line of Houston street. Mr. Towle testified that originally Houston street, at this point, was laid out on the Delancey farm map as a 50-feet street, and that all the streets parallel to Houston street in this locality were also 50 feet wide; that Houston street had been legally opened as a 50-feet street; that, on the atlas of the city of New York, Houston street appears as a 50-feet street, but that by recent actual survey he now makes Houston street at this point to be only 49 feet 8½ inches in width. Mr. Lynch, the surveyor for the trustee, made Houston street a 50-feet street, and he described the property as 200 feet 3 inches from the corner of Houston and Smith streets, while Mr. Towle, making the street to be only 49 feet 8½ inches wide, begins his description of the property in question as 200 feet 8½ inches from Houston street. Mr. Towle, however, said that, even though he should begin 200 feet 8½ inches

from that corner, the vacant lot in question is described in the way the trustee agreed to convey it. The trustee offered the defendant a deed describing the property as 200 feet 3 inches from the corner of Houston street, and also offered to give him a deed describing the property in the same way it was described in the deed to William Appleby in 1827. There is no serious dispute between the surveyors. Both testify that the amount of vacant land which the trustee undertook to sell is contained in the lot known as No. 127 Pitt street, and that the amount of land is between the two buildings, one a six-story and the other a four-story building; that the land can be described from Stanton street as well as from Houston street, and the amount of land which the trustee offered to sell could be conveyed to the purchaser by such description. Under these circumstances, this objection is not well founded.

Second. The second objection is that all the parties entitled to notice did not receive notice of the application for the appointment of a trustee. This objection raises a question of law, the purchaser claiming that all the cestuis que trustent named in the will of William Appleby, deceased, or their heirs or next of kin, are entitled to notice of the application for the appointment of a trustee. Under the will of William Appleby and the codicils thereto, his executors and trustees were to pay to Sarah Ann Appleby an annuity of $800 a year, and on her death the property was to be distributed, share and share alike, among his children, James Appleby, Walter A. Appleby, Joseph C. Appleby, and John A. Appleby. On January 2, 1878, James Appleby executed a mortgage of all his right, title, and interest in the estate of his father to Joseph C. Appleby. This mortgage was subsequently foreclosed, and at the sale Joseph C. Appleby bought all the right, title, and interest of James Appleby in the estate of William Appleby, deceased. On February 18, 1880, Walter A. Appleby sold to Joseph C. Appleby all his right, title, and interest in the estate of William Appleby; so that, at the time of the application for the appointment of a substituted trustee in the place of James Appleby and Joseph C. Appleby, both deceased, the only persons having an interest in the estate of William Appleby, deceased, were the heirs at law and next of kin of Joseph C. Appleby, deceased, and the heirs at law and next of kin of John A. Appleby, deceased. Walter A. and James Appleby having aliened their interests in the trust estate many years prior to this application, their heirs-at-law and next of kin had no interest whatever in the estate, and were not entitled to, and did not receive, notice of the application for the appointment of said trustee. Under the provisions of the statute which are now found in sections 83 and 84 of the real property law (chapter 547, Laws 1896), James Appleby and Walter Appleby had an absolute right to sell their interests in the estate of their father. Section 87 of said law, referred to by counsel for the defendant, refers to an entirely different case from the one at bar, and must be read in connection with sections 85 and 86. The objection made by the purchaser, that the heirs and next of kin of James Appleby and Walter A. Appleby were not notified of the application for the appointment of the trustee, is, in my opinion, untenable, because they had no inter-

est in the estate at the time of the application, and have no interest now.

Third. The third objection is that the beneficiaries under the will of William Appleby had so acted with the property as to destroy the trust created by the will. One answer to this objection is that when Joseph C. Appleby bought all the right, title, and interest of Walter Appleby in the estate of William Appleby, and also bought at foreclosure all the right, title, and interest of James Appleby, he did not go into possession of the property as purchaser, or claim the right to collect three-quarters of the rent. The fact is that, at the death of William Appleby, his executor, James A. Appleby, went into possession of the property, collected the rents of the same, and accounted before the surrogate's court up to the time of his discharge, October 23, 1878. Another answer is that the appellate division has decided that the title to this estate was in the original trustees named in the will, and that upon their death the duty was devolved upon the supreme court of appointing a trustee to carry out the provisions of such will, and this has been done. Prior to this decision, representatives of William Appleby were in possession of the premises, collected all the rents, accounted to the surrogate, and distributed the money in accordance with the decree of the surrogate. Therefore William Appleby or his representatives have always been in possession of the property since the same was purchased by William Appleby, in 1827.

Fourth. The fourth objection is that the difference of five inches, which defendant claims the lot was short, reduced the value of it by the sum of $6,000. This point is not discussed by defendant's counsel in his brief, but, as I understand it, this objection depends upon the objection above noticed, that the trustees could not convey the property which they offered to sell, and, as that objection has been overruled, this must be also. I have not been furnished with a copy of the stenographer's minutes, but, as I remember the testimony given on the trial, the preponderance of evidence was in favor of the claim made by the plaintiff that, even if there were a shortage of five inches, it would not materially decrease the market value of the property. Some other objections are raised on behalf of the defendant, but they do not seem to me to be of sufficient importance to require that they should be discussed in this opinion. The plaintiff is entitled to judgment, as prayed for in the complaint, requiring the defendant to complete his purchase.

Judgment for plaintiff.